United States District Court
Southern District of Texas
**ENTERED**
February 22, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| Vashaun Scott, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | Case No. 4:21-cv-04114 |
| v. | § | |
| | § | |
| Bobby Lumpkin, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Petitioner Vashaun Scott seeks habeas relief under 28 U.S.C. § 2254 from his state conviction for aggravated robbery.  Dkt. 1; Dkt. 3.  Respondent Bobby Lumpkin ("the Director") moved for summary judgment.  *See* Dkt. 9. After reviewing Scott's petition and supporting memorandum, Dkt. 1, Dkt. 3, the Director's motion for summary judgment, Dkt. 9, the record, and the applicable law, it is recommended that Scott's petition be denied, that the Director's motion be granted, and that the Court decline to hold an evidentiary hearing and to issue a certificate of appealability.

## <u>Background</u>

On February 27, 2013, Petitioner Vashaun Scott allegedly broke into the home of Donnie Thomas, struck him with a firearm, and stole his property.  *See*

Dkt. 10-1 at 7; Dkt. 10-4 at 87-88.   In June 2013, he was charged with aggravated robbery, a first-degree felony under Texas law.  Dkt. 10-1 at 7.  The indictment was later amended to include an enhancement based on Scott's prior felony conviction.  *Id.* at 61-63.  Scott's case went to trial in June 2018.  *See* Dkt. 10-4 at 1.

At trial, much of the evidence implicating Scott was not seriously disputed.  Scott did not contest that several armed assailants had entered Thomas's trailer, Dkt. 10-5 at 23-25, beaten him with weapons, *id.* at 29, shot him, *id.* at 25, and ransacked his home, *id.* at 32, 67-69.  Indeed, the State offered compelling evidence from multiple witnesses, including investigating police officers Lieutenant Scott Bennett (*id.* at 71-92) and Detective Scott Mitchell (*id.* at 97-123), the victim (Thomas, *id.* at 21-66), an eyewitness who rendered aid to Thomas (Mike Roempke, Dkt. 10-4 at 92-99), a clerk at the pawn shop to which Thomas's stolen property was sold (Consuelo Arroyo, Dkt. 10-5 at 123-25), a bystander who saw several individuals and a car near Thomas's trailer (Ian Bracewell, Dkt. 10-5 at 7-20), and one of Scott's co-conspirators (Kristy Schmidt, *id.* at 126-36; Dkt. 10-6 at 4-28).  The State also presented photos of the crime scene, *see* Dkt. 10-8 at 24-37, and of Thomas's injuries, *see id.* at 42-48.  Scott did not meaningfully challenge that Thomas suffered serious bodily injury or that property had been stolen from his home.

The central point of conflict concerned the identity of Thomas's attackers. Thomas testified that he had tussled with two men once they entered his home. Dkt. 10-5 at 24-26. The first man, who was tall, lanky, and dark-skinned—later identified as Rendrick Taylor, *id.* at 130-31—pointed and fired a gun at Thomas, grazing Thomas's head, *id.* at 25. Thomas described the second man as younger, shorter, and brighter skinned, wearing a cap. *Id.* at 25-26. Thomas surrendered after being shot, and the attackers blindfolded him. *Id.* at 26, 28. Eventually, Thomas escaped and ran out into the street, where a neighbor rendered aid. Dkt 10-4 at 93-95; Dkt. 10-5 at 31.

When police had interviewed Thomas at the hospital, Thomas stated he could identify one of his attackers but did not think he would recognize the second. Dkt. 10-5 at 114. So police only conducted a photographic line-up of the first attacker, not the second. *Id.* But when Thomas came to the first hearing and saw Scott in the back of the courtroom, Thomas identified him as one of the men who had attacked him.[1] *See* Dkt. 10-4 at 120 (testimony of Beth Malek, victim's assistance coordinator); *see also id.* at 112 (Thomas's account of when the identification occurred). At the trial, the court allowed Thomas to make an in-court identification of Scott as one of the assailants. Dkt. 10-4 at

---

[1] The trial court heard Thomas's explanation outside the jury's presence before ruling that Thomas would be allowed to identify Scott at trial. Thus, both that explanation and Thomas's subsequent trial testimony are relevant to the admissibility of his in-court identification of Scott.

127 (finding Thomas's identification testimony "to be untainted by any prior out-of-court or in-court encounters"); Dkt. 10-5 at 26-27 (overruling objection).

To confirm the identity of Thomas's assailants, one of the primary investigating officers, Detective Mitchell, sought out other evidence. Using serial numbers provided by Thomas, Detective Mitchell was able to trace Thomas's property to a store called Top Dollar Pawn. Dkt. 10-5 at 103-04. Detective Mitchell reviewed the security footage of the pawn shop and was able to identify Kristy Schmidt, Scott, and another accomplice named Darrick Ross. *Id.* at 105. Police questioned the suspects, and ultimately brought charges against all three. *Id.* at 113, 127. The State agreed to a plea deal with Schmidt, who served three years in prison for her part in the robbery. *Id.* at 127. At trial, Schmidt implicated Scott as one of the two assailants who entered Thomas's home. *Id.* at 131.

Scott did not offer any evidence during his case in chief. The jury convicted him and sentenced him to life in prison. Dkt. 10-6 at 56 (guilty verdict); Dkt. 10-7 at 46 (sentencing).

Scott appealed the judgment to the Tenth Court of Appeals, raising the same arguments that he now raises in his habeas petition. *See* Dkt. 10-9 at 7 (Scott's brief); Dkt. 10-13 (memorandum order). The court of appeals affirmed, Dkt. 10-13, and the Texas Court of Criminal Appeals ("TCCA") denied

4

discretionary review because Scott's petition was untimely, Dkt. 10-15–16.
Scott then sought habeas relief in state district court. *See* Dkt. 10-26.[2]

## Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") curtails
the grounds on which a federal court may issue a writ of habeas corpus.  Relief
is available for claims that were adjudicated on the merits only if the state
court's decision (1) "was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the Supreme Court of the
United States" or (2) "was based on an unreasonable determination of the facts
in light of the evidence presented in the State court proceeding."  28 U.S.C.
§ 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (quoting 28 U.S.C. § 2254(d));
*Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012) (same).  The analysis is
"limited to the record that was before the state court that adjudicated the claim
on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

"A state court's decision is deemed contrary to clearly established federal
law if it reaches a legal conclusion in direct conflict with a prior decision of the
Supreme Court or if it reaches a different conclusion than the Supreme Court
based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439

---

[2] The record does not appear to include all of Scott's state habeas petitions.
Regardless, the Director does not argue that Scott failed to exhaust his claims.  The
Court therefore addresses the merits of those claims.

(5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404-08 (2000)).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).  A federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301

6

(2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.* at 314.

"Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11 of the Rules Governing § 2254 Cases and Fed. R. Civ. P. 81(a)(2)). In ordinary civil cases, a court must construe the facts in a light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). AEDPA, however, modifies these principles; Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 284 (2004). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Id.*

As for the habeas petition itself, pleadings by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The filings of a federal habeas petitioner who is proceeding pro se are entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (citations omitted).

7

## Analysis

### I.   Scott has not shown that the in-court identification violated clearly established federal law.

As his primary argument, Scott argues that the trial court wrongly allowed the victim, Donnie Thomas, to identify Scott during the trial because Thomas originally told police that he could not recognize the second man who attacked him.   *See* Dkt. 3 at 6-8; *see also* Dkt. 10-5 at 112-14 (Detective Mitchell's testifying that Thomas "didn't think he would be able to recognize the second male").   Indeed, at trial, Thomas could not recall whether police had shown him Scott's photograph, Dkt. 10-5 at 47, and he gave conflicting testimony about who he might have told that he recognized Scott, *compare, e.g.*, Dkt. 10-5 at 49 (Thomas unable to recall pointing out Scott to Beth Malek during the first hearing), *and id.* at 53 & 55 (stating that he told lawyers that he recognized Scott, but he did not remember telling specific prosecutors), *with* Dkt. 10-4 at 112 (testifying that he identified Scott "ever since I've seen him in this courtroom, the first time he came in here live and in person" and based solely on seeing Scott in his house); *id.* at 120 (Beth Malek's testimony that Thomas identified Scott at the first hearing).

In a federal habeas proceeding, however, the Court cannot review the state court's rulings *de novo*.   *See Williams v. Taylor*, 529 U.S. 362, 376 n.8 (2000).   Rather, those rulings must stand unless the state court violated clearly

established federal law as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).  Scott has failed to make such a showing.

The controlling case on this issue is *Neil v. Biggers*, 409 U.S. 188 (1972).  In *Biggers*, a petitioner challenged his in-court identification by a victim as impermissibly suggestive.  *Id.* at 189-90.  Despite a lapse of seven months between the crime and the identification, and despite the police using a procedure that was more likely to suggest that Biggers was the perpetrator, *id.* at 194-95, the Supreme Court held that the witness's "record for reliability" was sufficient to allow the identification to go to the jury, *id.* at 201.  The Court articulated five relevant factors that supported its conclusion: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation."  *Id.* at 199-200.

Under these factors, the trial court did not unreasonably apply controlling law by permitting Thomas's in-court identification of Scott.  Although Thomas equivocated about the details of how and when he identified Scott, *see* Dkt. 10-4 at 112, 119; Dkt. 10-5 at 45, 47, 49, 53, 55, Thomas had also provided to Detective Mitchell, during his initial interview, a physical description of the attacker that matched Scott's appearance, *see id.* at 112-14.

9

Beth Malek, the State's victim assistance coordinator, also testified that Thomas recognized Scott upon seeing him "at the very first court proceeding" in the case. *See* Dkt. 10-4 at 120. Although Ms. Malek did not specify the date, the docket sheet indicates that the first hearing was Scott's arraignment on August 2, 2013—just six months after the incident. *See* Dkt. 10-2 at 64.

As for the *Biggers* factors, although Thomas only glimpsed his assailant briefly and his degree of attention was limited given the violence of the attack, his description was nonetheless accurate, he identified Scott with a high degree of certainty at the initial hearing, and the length of time between the attack and that hearing was sufficiently short to ensure that the identification was reliable. Thus, "it would not have been objectively unreasonable [for the state court] to weigh the totality of these circumstances against [Scott]." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559-60 (2018) (internal citations and quotation marks omitted) (reversing grant of habeas relief under *Biggers* where there was "at least one theory that could have led a fairminded jurist to conclude that the suppression motion would have failed"). Accordingly, Scott's first ground for habeas relief should be rejected.

## II.   The trial court's alleged procedural errors did not render the trial fundamentally unfair.

Scott advances two other arguments that, construed liberally, contend that the trial court violated his due process rights in a way that undermined the fairness of his trial.[3]   As his second ground, Scott asserts that the trial court wrongfully denied his motion for a continuance after overruling his objection to the in-court identification by Thomas.  Dkt. 3 at 9-10; *see also* Dkt. 10-4 at 127-28 (motion for and denial of continuance).  For his fifth ground, Scott argues that the trial court improperly admitted Scott's criminal history—the "pen packet"—during the punishment phase.  Dkt. 3 at 13-14.  These arguments are foreclosed.

To obtain habeas relief for a "generic due process violation"—that is, a violation that is not attached to an expressly enumerated right—a petitioner must show that "the court's action denie[d] [the] defendant a fundamentally fair trial."  *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985).  This threshold requires "a reasonable probability that the verdict might have been different had the trial been properly conducted."  *Rogers v. Lynaugh*, 848 F.2d

---

[3] To the extent that Scott's claims assert an error of state law, his arguments are barred.  Under Section 2254, a state prisoner seeking review "must assert a violation of a federal constitutional right."  *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994).  Errors of state law are insufficient.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.").

606, 609 (5th Cir. 1988).  The foregoing standard applies both to denials of a continuance, *see Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) ("When a denial of a continuance forms a basis of a petition for a writ of habeas corpus ... it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process"), and to the admission of a defendant's pen packet during the punishment phase, *see, e.g.*, *Erwin v. Dir., TDCJ-CID*, 2008 WL 623219, at *12-13 (E.D. Tex. Mar. 5, 2008).

Scott asserts, in conclusory fashion, that the denial of a continuance "put [him] at a real disadvantage during the trial," that it "prevent[ed] the trial attorney from calling all of the necessary witnesses" and had "the ultimate effect of having the Court deny the motion to suppress the In-Court identification."  Dkt. 3 at 9.  He does not show "a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered *the verdict*."  *Schrader*, 904 F.2d at 288 (alteration added, internal quotation marks omitted).  To the contrary, Scott cites no evidence suggesting that someone else committed the crime for which he was convicted.  And the State presented both the testimony of an accomplice, *see* Dkt. 10-5 at 130-32, and video footage from a pawn shop showing that Scott was the man who possessed the stolen property from Thomas's home, *see id.* at 108 (describing State's Exhibit 34, pawn shop video).  Thus, Scott was not

12

prejudiced by the denial of a continuance even assuming the trial court should have granted one.

Scott's argument that his pen packet was not properly authenticated is equally deficient. According to Scott, the State failed to present a properly certified judgment along with the pen packet. *See* Dkt. 3 at 13. But Scott fails to show how such an alleged error rendered the proceeding fundamentally unfair. *See Erwin*, 2008 WL 623219, at *12-13 (concluding that admission of defendant's pen packets failed to state a constitutional claim). There is no contention that the pen packet inaccurately stated Scott's criminal history. Instead, Scott merely invokes procedural requirements for admitting the pen packet into evidence. *See* Dkt. 3 at 13-14. Those requirements, even if violated, do not create the type of "fundamental unfairness" that permits habeas relief.

In sum, the trial court's decisions to deny Scott a continuance (second ground) and to admit his pen packet (fifth ground) do not merit relief.

## III. <u>Scott has not shown that the State failed to meet its burden of proof.</u>

As his third ground, Scott contends that the trial court erred by refusing to enter a directed verdict in his favor. Specifically, Scott contends that the State "did not present any evidence necessary to connect [Scott] directly to the crime." Dkt. 3 at 11. This argument is meritless.

On collateral review, the standard for a sufficiency of the evidence attack is exceptionally strict. "The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing the evidence, federal courts are commanded to "give great weight to the state court's determination[,]" *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991), and "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict," *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Scott's sole challenge to the evidence concerns the State's identification of him as the second attacker who committed the charged offense of aggravated robbery. *See* Dkt. 3 at 11; Dkt. 10-1 at 7 (indictment, charging Scott under Tex. Penal Code § 29.03). But the Tenth Court of Appeals marshaled the evidence when rejecting Scott's sufficiency-of-the evidence challenge, and the Court sees no reason to disturb that conclusion. Dkt. 10-13 at 10-11; Dkt. 10-1 at 7 (indictment, charging Scott under Tex. Penal Code § 29.03). A cooperating accomplice implicated Scott as one of the people in Thomas's home. *See* Dkt. 10-5 at 131. A bystander also described seeing a man with Scott's similar appearance and clothing near the scene of the crime. *See id.* at 9-12. And video evidence at the pawn shop showed Scott with Thomas's stolen property. *See id.* at 105. Moreover, Thomas also identified Scott as the second man who

14

entered his home.  *See supra* Part I.  Given this evidence, a rational jury could conclude, beyond a reasonable doubt, that Scott had assaulted Thomas.  *See Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992) (denying habeas relief despite conflicting eyewitness reports that diminished the certainty of on-scene identifications of Foy).  The state court also was objectively reasonable in upholding the jury's verdict.  *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (federal habeas courts cannot overturn a conviction based on *Jackson* unless "the state court decision was objectively unreasonable").  Scott's request for relief on this claim should be denied.

## IV.   <u>The jury instructions did not violate Scott's due process rights.</u>

Scott's fourth ground challenges the trial court's jury instructions about the testimony of his accomplice, Kristy Schmidt.  According to Scott, Schmidt's testimony should have been stricken for lack of corroborating evidence implicating him as a perpetrator.  *See* Dkt. 3 at 12.  This argument is deficient.

Federal habeas precedent "places an 'especially heavy' burden on a defendant who ... seeks to show constitutional error from a jury instruction that quotes a state statute."  *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  "[T]he defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that

relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* (internal citations and quotation marks omitted).

In Scott's case, the trial court provided ample guidance about the State's burden with regard to Schmidt's testimony. The court instructed that:

> A person cannot be convicted of a crime on the uncorroborated testimony of an accomplice. An accomplice is someone whose participation in the crime would permit his conviction for the crime charged in the indictment.

> Kristy Schmidt is an accomplice to the crime of aggravated robbery, if it was committed. The defendant, Vashuan Xavier Scott, therefore cannot be convicted on the testimony of Kristy Schmidt unless the testimony is corroborated.

> Evidence is sufficient to corroborate the testimony of an accomplice if that evidence tends to connect the defendant, Vashuan Xavier Scott, with the commission of any offense that may have been committed. Evidence is not sufficient to corroborate the testimony of an accomplice if that evidence merely shows an offense was committed.

> Proof that the defendant was merely present in the company of the accomplice shortly before or after the time of any offense that was committed is not, in itself, sufficient corroboration of the accomplice's testimony. That evidence, however, can be considered along with other suspicious circumstances.

> You can convict the defendant on the testimony of Kristy Schmidt only if—

> 1. you believe that the testimony of Kristy Schmidt is true and shows the defendant is guilty; and

> 2. there is other evidence, outside the testimony of Kristy Schmidt, that tends to connect the defendant, Vashuan Xavier Scott, with the commission of the offense charged; and

      3. on the basis of all the evidence in the case, you believe, beyond a reasonable doubt, that the defendant is guilty.

Dkt. 10-2 at 21.  The first sentence of the first paragraph and second sentence of the third paragraph are substantively identical to language in the Texas statute specifying the corroboration requirement.  *Compare id.*, *with* Tex. Code Crim. Proc. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

      Scott fails to meet his "especially heavy burden" to show that this instruction improperly "relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  *Waddington*, 555 U.S. at 190-91.  The instruction explicitly required the jury to find that other evidence corroborated Schmidt's testimony before they could reach a guilty verdict based on that testimony.  *See* Dkt. 10-2 at 21.  Far from relieving the State of its burden of proof, the instruction made clear that the jury could only convict if "on the basis of all the evidence in the case, [the jury] believe[d], beyond a reasonable doubt, that the defendant [was] guilty."  *Id.*  And as the Tenth Court of Appeals concluded, ample evidence supported the jury's verdict.  *See* Dkt. 10-13 at 17 (discussing video and eyewitness testimony placing Scott at the scene of the crime).  The jury instructions do not warrant habeas relief.

## V.   Scott is not entitled to an evidentiary hearing or a certificate of appealability.

This Court should decline to hold an evidentiary hearing on Scott's petition.  A petitioner is entitled to a hearing only upon showing (1) a claim that relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence" or (3) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e).  Because Scott has not made such a showing, an evidentiary hearing is unwarranted.

Further, Section 2254 actions require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  A district court must issue or deny a certificate of appealability when entering a final order rejecting habeas relief.  *See Estelle v. Lumpkin*, 2022 WL 17587128, at *2-3 (S.D. Tex. Nov. 22, 2022).  Scott has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard*, 542

U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This Court therefore should deny a certificate of appealability.

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** the Director Bobby Lumpkin's Motion for Summary Judgment (Dkt. 9), **DENY** Petitioner Vashaun Scott's petition for a writ of habeas corpus (Dkt. 1), decline to hold an evidentiary hearing, and decline to issue a certificate of appealability.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 22, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge